In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00056-CR


______________________________




ERIC RASHAD RUTHERFORD, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 37095-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Eric Rashad Rutherford was convicted by a jury of possessing between four and 200 grams
of cocaine with intent to deliver. He was sentenced to ten years' imprisonment in the Texas
Department of Criminal Justice-Institutional Division and ordered to pay a $5,000.00 fine. 
Rutherford appeals on the grounds that the evidence was legally and factually insufficient to support
the judgment. We affirm. 

I. STANDARD OF REVIEW

 The standards of review do not change when the case involves circumstantial, rather than
direct evidence. Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). A case based on
circumstantial evidence is built brick by brick. In other words, "[e]ach fact need not point directly
and independently to the guilt of the appellant." Guevara v. State, 152 S.W.3d 45, 49 (Tex. Crim.
App. 2004). If a conclusion is warranted by the combined cumulative force of all incriminating
circumstances, the evidence is sufficient. Id. 

 A. Legal Sufficiency

 A separate analysis is required when analyzing legal and factual sufficiency. The requirement
of legal sufficiency confirms that a fact question was raised by the evidence. Clewis v. State, 922
S.W.2d 126, 133 (Tex. Crim. App. 1996). If the evidence in this case was insufficient to raise an
issue of Rutherford's guilt, it should not have been submitted for the jury's resolution. Id. When
conducting this analysis, we review all of the evidence in the light most favorable to the verdict and
determine whether any rational jury could find the essential elements of possession of cocaine with
intent to deliver as charged by the indictment beyond a reasonable doubt. Hooper, 214 S.W.3d at 13;
Lacour v. State, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000) (citing Jackson v. Virginia, 443 U.S.
307, 319 (1979)); Clewis, 922 S.W.2d at 132-33; Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim.
App. 1991). 

 Once we determine the evidence raised issues for the jury's resolution, we will not sit as the
thirteenth juror re-evaluating the weight and credibility of the evidence. Williams v. State, 235
S.W.3d 742, 750 (Tex. Crim. App. 2007); Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App.
1999). Instead, we give full play to the jury's responsibility to weigh the evidence, resolve conflicts
in the testimony, and draw reasonable inferences from basic facts. Johnson v. State, 23 S.W.3d 1, 7
(Tex. Crim. App. 2000); Clewis, 922 S.W.2d at 133; Bottenfield v. State, 77 S.W.3d 349, 354 (Tex.
App.--Fort Worth 2002, pet. ref'd) (citing Jackson, 443 U.S. at 319). 

 B. Factual Sufficiency

 Unlike legal sufficiency review, we examine the evidence in a neutral light when assessing
factual sufficiency and determine whether the proof of guilt is obviously weak as to undermine
confidence in the verdict, or, if taken alone, is greatly outweighed by contrary proof so as to be
clearly wrong and unjust. Zuliani v. State, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); Johnson,
23 S.W.3d at 11; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); Harris v. State, 133
S.W.3d 760, 764 (Tex. App.--Texarkana 2004, pet. ref'd). A clearly wrong and unjust verdict is
manifestly unjust, shocks the conscience, or clearly demonstrates bias. Santellan v. State, 939
S.W.2d 155, 164 (Tex. Crim. App. 1997). 

 Because factual sufficiency is an issue of fact, we are not free to reweigh the evidence and
set aside the verdict merely because we feel a different result is more reasonable. Clewis, 922
S.W.2d at 135. Instead, we will only ensure that the jury reached a rational decision and will find
the evidence factually insufficient only when necessary to prevent manifest injustice. Johnson, 23
S.W.3d at 8-9, 12; Clewis, 922 S.W.2d at 133, 135; Cuong Quoc Ly v. State, 273 S.W.3d 778, 783
(Tex. App.--Houston [14th Dist.] 2008, pet. ref'd) (citing Muniz v. State, 851 S.W.2d 238, 246 (Tex.
Crim. App. 1993)). 

 C. The Hypothetically Correct Jury Charge

 Our analysis of whether the evidence is legally and factually sufficient is measured against
the elements of the offense with the same kind of analysis as that applied in the test for a
hypothetically correct jury charge for the case. (1) Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim.
App. 1997); see also Grotti v. State, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008). The
hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not
unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of
liability, and adequately describes the particular offense for which the defendant was tried." Malik,
953 S.W.2d at 240. It is used to evaluate both legal and factual sufficiency. Grotti, 273 S.W.3d at
281. 

 Rutherford was in possession of cocaine with intent to deliver as charged in the indictment
if he 1) knowingly; 2) delivered or possessed with intent to deliver; 3) four grams or more but less
than 200 grams; 4) of cocaine. Tex. Health & Safety Code Ann. § 481.112(a), (d) (Vernon Supp.
2009). Rutherford's only contention is that there was no evidence indicating he was the one who
knowingly possessed the cocaine. With the elements of the hypothetically correct jury charge in
mind, we turn to the issue of sufficiency of the evidence. 

II. THE EVIDENCE

 An informant pointed out a house to the police located at 8507 West Goforth Road as a place
where drugs were purchased. Although the informant could only remember one name-Rutherford's
brother Broderick-he told the police the house was occupied by a large black male with dreadlocks,
a large heavy-set black male around twenty-five years of age, a skinny black male, a light-skinned
black male, and a woman. The large males were described as over six feet tall. 

 The police placed the house under surveillance and noticed "there were so many people
coming and going from the residence . . . and not staying long." They obtained a warrant for the
location and coordinated with the SWAT team to execute it. Rutherford, a twenty-two-year-old large
black male standing six feet three inches tall, his brother Reginald, also a large black male, Curtis
Chattam, a light-skinned black male, and a female, Lottie Roberson, were in the home when the
SWAT team used a battering ram to break down the door. Rutherford "heard a loud bang" and "ran
to the back and laid on the floor" in the restroom. When the police entered, they noticed "the drug
paraphernalia, the marijuana grinder and scales [were] just out in plain view around the console of
the TV." An odor of marihuana permeated the residence. There was a rectangular black case on the
kitchen floor containing "baggies" of marihuana, some of which contained cocaine residue. A gun
was found, along with a large amount of money piled on the living room floor. On top of the kitchen
cabinets, officers found a sandwich bag filled with a large amount of crack cocaine in "cookie form." 
On the bottom shelf in the bathroom where Rutherford was found, officers recovered a black bag
with a "Kia" vehicle emblem containing a large amount of cocaine as well. Rutherford had driven
his girlfriend's Kia to the house that day. In his pockets, Rutherford had two bags of marihuana and
$1,265.00 in cash. He had no reported source of income. Also, his brother Broderick was on
disability and his brother Reginald was unemployed. A total of 71.52 grams of cocaine was
recovered from the house. 

 At trial, Rutherford took the stand to testify that the cocaine was not his. His girlfriend said
she gave Rutherford $1,300.00 of her tax return money for safekeeping. Rutherford admitted that
he used some of the money to buy the marihuana found in his pockets. He told the jury the house
belonged to Roberson, a family friend, and that he was visiting his brothers, one of whom was living
there at the time. Rutherford recalled the group was smoking "weed" and playing cards in the dining
room. Afterward, they went to the living room, "[Rutherford] rolled [his] weed," and was going to
the restroom when he heard the SWAT team enter. Although he had to traverse through the kitchen
where the black case containing marihuana was found on the floor in order to get to the restroom,
Rutherford denied seeing the black case. He claimed that the black Kia bag, found in the restroom
where he was located, was not his and that he did not know to whom the cocaine belonged. Chattam
claimed the money lying on the living room floor. Testifying officers stated that there was no
cocaine located on anyone, that nothing with Rutherford's name was found in the house, and that
they had no knowledge that Rutherford sold cocaine to anyone or that he was present when drugs
were sold.

III. ANALYSIS

 The State was required to prove that Rutherford exercised control, custody, management, or
care over the cocaine and that he knew the matter possessed was contraband. Tex. Penal Code
Ann. § 1.07(a)(39) (Vernon Supp. 2009); Evans v. State, 202 S.W.3d 158, 161 (Tex. Crim. App.
2006). By itself, mere presence at a location where drugs are found is not enough evidence to
exhaust the State's burden. Evans, 202 S.W.3d at 162. Along the same line, mere presence does not
make Rutherford a party to joint possession even if he knew of the existence of the contraband and
had knowledge of an offense. See Oaks v. State, 642 S.W.2d 174, 177 (Tex. Crim. App. 1982)
(possession means more than being where the action is). However, presence or proximity, when
combined with other direct or circumstantial evidence, may be sufficient to establish control,
management, custody, or care beyond a reasonable doubt if the proof amounts to more than a strong
suspicion or probability. Evans, 202 S.W.3d at 161; Lassaint v. State, 79 S.W.3d 736, 741 (Tex.
App.--Corpus Christi 2002, no pet.).

 Since Rutherford was not in exclusive possession of the house, additional independent facts
and circumstances must link him to the contraband "in such a way that it can be concluded that the
accused had knowledge of the contraband and exercised control over it." Roberson v. State, 80
S.W.3d 730, 735 (Tex. App.--Houston [1st Dist.] 2002, pet. ref'd). The evidence must demonstrate
that the link between a defendant and the contraband "generates a reasonable inference that the
accused knew of the contraband's existence and exercised control over it." Id. In other words, the
State must establish that the defendant's connection with the narcotics was more than just fortuitous. 
Poindexter v. State, 153 S.W.3d 402, 405-06 (Tex. Crim. App. 2005).

 To discern whether Rutherford's connection with the cocaine was more than fortuitous, we
will use the links test adopted by Texas courts to protect the innocent bystander from conviction
merely because of their unfortunate proximity to someone else's drugs. Evans, 202 S.W.3d at
161-62. These links include: (1) the defendant's presence when a search is conducted; (2) whether
the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the
narcotics; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether
the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made
incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the
defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other
contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right
to possess the place where the drugs were found; (12) whether the place where the drugs were found
was enclosed; (13) whether the defendant was found with a large amount of cash; (14) whether the
conduct of the defendant indicated a consciousness of guilt; (15) whether the accused made
incriminating statements connecting himself or herself to the contraband; (16) the quantity of the
contraband; and (17) whether the accused was observed in a suspicious area under suspicious
circumstances. Id. at 162 n.12; Muckleroy v. State, 206 S.W.3d 746, 748 n.4 (Tex. App.--Texarkana
2006, pet. ref'd); Olivarez v. State, 171 S.W.3d 283, 291 (Tex. App.--Houston [14th Dist.] 2005,
no pet.); Kyte v. State, 944 S.W.2d 29, 31 (Tex. App.--Texarkana 1997, no pet.). This
nonexhaustive list is not a litmus test, and it is the logical force of all of the evidence that guides our
determination. Olivarez, 171 S.W.3d at 291. In other words, the number of links present is not as
important as the degree to which they tend to link the defendant to the controlled substance. Taylor
v. State, 106 S.W.3d 827, 831 (Tex. App.--Dallas 2003, no pet.); Williams v. State, 906 S.W.2d 58,
65 (Tex. App.--Tyler 1995, pet. ref'd); Whitworth v. State, 808 S.W.2d 566, 569 (Tex.
App.--Austin 1991, pet. ref'd).

 A. Evidence at Trial Supported the Verdict 

 When the SWAT team entered the house, Rutherford admits he ran to and laid down on the
floor of the restroom where the black Kia bag, containing a large amount of cocaine, was found. 
With respect to the black Kia bag, the following links applied: 1) Rutherford was present when the
search was conducted; 2) "baggies" containing cocaine residue were in plain view on the kitchen
floor; 3) proximity and accessibility were met because the bag was found in the restroom where
Rutherford was located when the SWAT team entered the house; 4) Rutherford possessed marihuana
when arrested; 5) there was an odor of marihuana in the house; 6) marihuana, grinder, and scales
were present; 7) the drugs were found in the house, which is an enclosed space; 8) Rutherford was
found with a large amount of cash; 9) the quantity of the contraband was large; and 10) Rutherford
was observed in a suspicious area, a house known for the sale of drugs, under suspicious
circumstances where contraband and large amounts of cash and a gun were in plain view. 

 These links raised fact questions for the jury's resolution. We assume the jury resolved
conflicts in the testimony, weighed the evidence, and drew reasonable inferences in the manner
supporting the verdict. King v. State, 174 S.W.3d 796 (Tex. App.--Corpus Christi 2005, pet. ref'd). 
Intent to deliver may be inferred from the quantity of drugs possessed and from the manner in which
they were packaged. Rhodes v. State, 913 S.W.2d 242, 251 (Tex. App.--Fort Worth 1995), aff'd,
945 S.W.2d 115 (Tex. Crim. App. 1997). Here, the large amount of cocaine found in the Kia bag,
along with the fact that several "baggies" with cocaine residue were found, indicated intent to
deliver. (2) Keeping in mind that the jury was the sole judge of the weight and credibility of the
evidence, we find that a rational jury could have found that Rutherford was in knowing possession
with intent to deliver of over four grams of cocaine contained in the black Kia bag. Further, even
in reviewing the evidence in a neutral light, we do not find the jury's verdict was clearly wrong,
manifestly unjust, biased, or shocking. 

 Since the evidence was both legally and factually sufficient to establish Rutherford was in
possession of four grams or more but less than 200 grams of cocaine, we need not discuss whether
Rutherford was in knowing possession of the bag of cocaine found on top of the kitchen cabinets. 
Rutherford's points of error are overruled. 

 B. Modification of Judgment 

 The Texas Rules of Appellate Procedure give this Court authority to modify judgments
sua sponte to correct typographical errors and make the record speak the truth. Tex. R. App. P. 43.2;
French v. State, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); Battle v. State, No. 06-07-00148-CR,
2008 WL 482343, at *3 (Tex. App.--Texarkana Feb. 25, 2008, no pet.) (mem. op., not designated
for publication) (modifying judgment to reflect proper statute under which defendant should have
been convicted); Gray v. State, 628 S.W.2d 228, 233 (Tex. App.--Corpus Christi 1982, pet. ref'd).

 The trial court's judgment indicates the statute for the offense of which Rutherford was
convicted was Section 481.123 of the Texas Health and Safety Code, which is entitled "Defense to
Prosecution For Offense Involving Controlled Substance Analogue." See Tex. Health & Safety
Code Ann. § 481.123 (Vernon Supp. 2009). Our review of the record shows that the correct statute
for the offense is Section 481.112(d) of the Texas Health and Safety Code. See Tex. Health &
Safety Code Ann. § 481.112(d). Therefore, we hereby modify the judgment to indicate that the
statute under which Rutherford was convicted is Section 481.112(d) of the Texas Health and Safety
Code.

IV. CONCLUSION

 As modified, we affirm the trial court's judgment. 

 


 Jack Carter

 Justice


Date Submitted: October 15, 2009

Date Decided: November 5, 2009


Do Not Publish


1. Malik controls "even in the absence of alleged jury charge error." Gollihar v. State, 46
S.W.3d 243, 255 (Tex. Crim. App. 2001). 
2. Over four grams of cocaine were contained in the Kia bag. It is unclear from the record
received by this Court whether 46.48 grams or 25.04 grams were found in the Kia bag. The record
shows that one of the two large quantities of cocaine was found in the kitchen and the other in the
restroom. 


i>Lewis v. Drake, 641 S.W.2d 392, 394 (Tex. App.—Dallas 1982, no writ).


 "An action in the
nature of quo warranto is available if . . . a person usurps, intrudes into, or unlawfully holds
or executes a franchise or an office, including an office in a corporation created by the
authority of this state." See Tex. Civ. Prac. & Rem. Code Ann. § 66.001(1) (Vernon 1997). 
However, only the "attorney general or the county or district attorney of the proper county"
may bring an action in the nature of quo warranto. Tex. Civ. Prac. & Rem. Code Ann.
§ 66.002(a) (Vernon 1997).
          Reed, therefore, clearly lacked standing to bring a quo warranto action seeking the
removal of Prince from office. It being well established that standing is a necessary
component of subject-matter jurisdiction, the trial court did not have jurisdiction to hear
Reed's suit seeking the removal of the sheriff. See City of San Antonio v. Summerglen
Prop. Owners Ass'n, 185 S.W.3d 74, 85 (Tex. App.—San Antonio 2005, pet. filed).
          Claim For Damages Not Within Waiver Provision of TTCA
          Reed does not demonstrate how the TTCA waives the immunity of the Sheriff's
Office with respect to his claims of negligence. None of Reed's factual allegations fall
within the TTCA's limited waiver of immunity in Section 101.021. Even a most favorable
reading of Reed's allegations does not establish that the TTCA waives immunity with
respect to those allegations. This was a proper basis for the trial court's dismissal of
Reed's claims. 
          Even construing the pleadings in Reed's favor, we determine he failed to
demonstrate that his claims fell within the TTCA's waiver of immunity. In fact, his
allegations affirmatively negate waiver in that his allegations concern claims for which the
TTCA specifically leaves intact a governmental unit's immunity.



          The Sheriff's Office would not be immune from suit on allegations that the deputies
negligently implemented policies of the sheriff's office regarding the deputies' responses
to Reed's repeated reports of criminal activity. See Parrish, 10 S.W.3d at 740. Reed,
however, makes no such allegations. His several, global allegations depict a pattern of
negligence. He names several deputies and also seeks the return of his property taxes
because, he alleges, the Sheriff's Office does not provide adequate law enforcement
services. We read the allegations as falling within Section 101.055(3), for which the
sheriff's office enjoys immunity.
          In contrast, the allegations in Parrish focused on the negligent use of personal
property by an officer and his negligent failure to implement the department's policies found
in the San Augustine Police Department Manual. Id. at 738. The trial court denied the
city's plea to the jurisdiction, which relied on Section 101.055(3), among other provisions. 
Id. at 737. The Tyler court concluded that the Parrishes' allegations raised the issue of
negligent implementation of policy for which the TTCA did not provide immunity. Id. at 740. 
For that reason, the Tyler court affirmed the trial court's denial of the city's plea to the
jurisdiction. Id. 
          Here, however, Reed attacks the integrity and competence of the entire Sheriff's
Office and its policy regarding response to repeated reports of property crimes. Such
allegations do not constitute claims over which the trial court had jurisdiction. The trial
court properly concluded that Reed's allegations affirmatively negated its subject-matter
jurisdiction over his claims. The trial court, therefore, properly sustained the County's plea
to the jurisdiction without allowing Reed an opportunity to amend his pleadings. See
Brown, 80 S.W.3d at 555. 
Allegations Concerning the Appraisal District
          In his allegations concerning the Appraisal District, Reed sought return of the
property taxes he paid to the county based on the alleged negligent acts of the sheriff's
office. In addition, Reed noted in his petition an "overpayment of my actual taxes." Reed's
intent becomes clearer when he explained that he sought return of the taxes because part
of his taxes went to the Sheriff's Office for services he claims to have never received. 
          At its hearing on the plea to the jurisdiction, the trial court concluded that Reed
made allegations of negligence against the Appraisal District and that, for the same
reasons as those applicable to Reed's claims against the Sheriff's Office, Reed failed to
demonstrate that the TTCA waived the Appraisal District's sovereign immunity from suit. 
          Immunity Intact for Appraisal District
          Reading Reed's petition as raising allegations of negligence against the Appraisal
District, we note that the Appraisal District is a political subdivision of the State and,
therefore, look again to the TTCA to define the boundaries of its sovereign immunity. See
Tex. Tax Code Ann. § 6.01 (Vernon 2001). The TTCA specifically addresses issues
relating to the assessment of taxes. See Tex. Civ. Prac. & Rem. Code Ann. § 101.055(1)
(Vernon 2005). Section 101.055(1) leaves intact a unit's immunity relating to "a claim
arising in connection with the assessment or collection of taxes by a governmental unit." 
See Tex. Civ. Prac. & Rem. Code Ann. § 101.055(1). Thus, to the extent Reed claims the
Appraisal District negligently collected taxes to be allocated to the sheriff's office for
services that were not rendered, the TTCA leaves intact the Appraisal District's sovereign
immunity. 
          We note, however, it is not clear that Reed complained of any act of negligence
committed by the Appraisal District. We, therefore, also look at this issue in terms of the
availability of administrative review of the amount and allocation of property taxes paid.



          Failure to Exhaust Administrative Remedies
          A taxpayer must meet specific and mandatory provisions of the Tax Code in order
to challenge the amount of taxes assessed against a property. See Tex. Tax Code Ann.
§ 41.01–.71 (Vernon 2001 & Supp. 2005). He or she must comply with these provisions
before filing suit; compliance is a jurisdictional prerequisite to suit. See Tex. Tax Code
Ann. §§ 42.09(a)(2), 42.21(a) (Vernon 2001); Matagorda County Appraisal Dist. v. Coastal
Liquids Partners, L.P., 165 S.W.3d 329, 331 (Tex. 2005) (holding "a taxpayer's failure to
pursue an appraisal review board proceeding deprives the courts of jurisdiction to decide
most matters relating to ad valorem taxes");


 Gibbud v. Moron, 972 S.W.2d 797, 800 (Tex.
App.—Corpus Christi 1998, pet. denied). Failure to adhere to the Texas Tax Code's
administrative review procedures, therefore, may be the subject of a plea to the jurisdiction.
          The record before us does not indicate Reed attempted to pursue any administrative
remedy regarding his complaint that the taxes paid were not being appropriately assessed
or allocated. Because Reed failed to exhaust the available administrative remedies before
bringing suit against the Appraisal District for the return of the $871.00 in property taxes,
the trial court was without jurisdiction to decide that issue. This conclusion represents an
alternative basis for the trial court's conclusion that it lacked subject-matter jurisdiction over
Reed's claims.
Conclusion 
          Reed's pleadings failed to demonstrate that the trial court had jurisdiction over
Reed's claims against these two Bowie County governmental units. Reed clearly lacked
standing to bring a quo warranto action seeking the removal of Prince from office. The
TTCA leaves intact the sovereign immunity relating to claims arising from the failure to
provide or the method of providing police protection. See Tex. Civ. Prac. & Rem. Code
Ann. § 101.055(3). To the extent Reed alleged that the Appraisal District was negligent
in its assessment or collection of property taxes, the TTCA also leaves intact sovereign
immunity. See Tex. Civ. Prac. & Rem. Code Ann. § 101.055(1). To the extent that his
complaints against the Appraisal District centered, instead, on the collection of a certain
amount of property taxes to be allocated to the sheriff's office, or the amount of taxes
assessed against Reed's property, Reed's failure to exhaust his administrative remedies
deprives the trial court of jurisdiction over his claims. See Tex. Tax Code Ann.
§§ 42.09(a)(2), 42.21(a). The trial court, therefore, properly granted the County's plea to
the jurisdiction without allowing Reed an opportunity to amend his pleadings. 
          For these reasons, we affirm the trial court's judgment.



                                                                Donald R. Ross
                                                                Justice
 
Date Submitted:      May 15, 2006
Date Decided:         June 2, 2006